FILED

MAR 30 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

THOMAS FRANK MANISCALCO,

Petitioner - Appellant,

v.

A. M. GONZALES,

Respondent - Appellee.

No. 12-55100

D.C. No. 8:03-cv-01363-DDP-FMO

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted November 21, 2014
Pasadena, California

Before: KLEINFELD and PAEZ, Circuit Judges, and CHRISTENSEN, Chief
District Judge.[**]

In this § 2254 habeas appeal, John Maniscalco first argues that his due

process rights were violated as a result of a four-year delay between the murders

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Dana L. Christensen, Chief District Judge for the U.S.
District Court for the District of Montana, sitting by designation.

and his indictment. While the California Court of Appeal found actual prejudice to Maniscalco, Maniscalco's due process claim for pre-indictment delay still fails because there was no culpability on the state's part. The investigation was a complex one: a triple homicide in which the bodies had decomposed. And it was early on beset by false leads. An informant told police that another man had committed the murders, and weapons recovered from Maniscalco's property tested negative as the crime scene weapon. It was only in 1984 when Bruce Van Arsdell, a key witness, was located that the state believed it had sufficient evidence to prove guilt beyond a reasonable doubt, and then the state brought the charges. There is no evidence that the state intentionally delayed the indictment in order to gain a tactical advantage. Nor is there evidence of other misconduct or negligence on the state's part. It was not an unreasonable application of United States Supreme Court precedent for the California Court of Appeal to hold that lack of culpability on the state's part precludes relief for pre-indictment delay.

Maniscalco next argues that his Sixth Amendment right to a speedy trial was violated by a nine-year delay between his indictment and conviction. In Barker v. Wingo, the United States Supreme Court articulated four factors for determining whether there is a speedy trial violation: (1) the length of the delay; (2) the reason

for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  407 U.S. 514, 530 (1972).  Applying those four factors, the Supreme Court in <u>Barker</u> held there was no speedy trial violation.

In <u>Barker</u>, there was over a five year delay between the defendant's arrest and his trial.  The Supreme Court found there to be no speedy trial violation because the defendant made no objection to the state's first eleven motions for continuances.  <u>Id.</u> at 517.  While the defendant filed a motion to dismiss in response to the state's twelfth motion for a continuance, the motion to dismiss was denied and the court granted the motion to continue.  <u>Id.</u>  The state was granted two additional continuances to which the defendant did not object.  <u>Id.</u>  Then on the day of the trial, a key witness, the sheriff, got sick.  <u>Id.</u> at 517–18.  The court granted the state's motion to continue the trial three more times as a result.  <u>Id.</u> at 518.  The defendant objected to each of these.  <u>Id.</u>  Finally, after the third of these continuances, the court notified the state that if the case was not tried this time it would be dismissed with prejudice.  <u>Id.</u>

The minimal prejudice to the defendant along with the fact that the defendant did not want a speedy trial outweighed the length of the delay and the

fact that, save for the sheriff's illness, the reasons for delay were weak. Id. at 534. In reaching this decision, the Supreme Court in Barker emphasized that "the record strongly suggests that while [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." Id. at 535. The Court concluded, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right [to a speedy trial] on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." Id. at 536.

Here, reasonable minds could differ on whether Barker v. Wingo is so factually analogous as to control. But if reasonable minds can differ, we must defer to the state court's finding. See 28 U.S.C. § 2254(d); see also Harrington v. Richter, 562 U.S. 86, 102–03 (2011) ("[Section 2254(d)] preserves authority to issue the [habeas] writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas

4

corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (internal quotation marks and citations omitted).

The California Court of Appeal found that Maniscalco either was the cause of or acquiesced in almost all the delays. The delay in this case was about six years until the first trial, nine until the retrial and convictions. Though the trial court delays are troubling, Maniscalco did not ask for a speedy trial until less than a year before he got his retrial. We are not the state court, and the record does not warrant holding that the state court's finding was an unreasonable determination of fact or application of Supreme Court holdings. Maniscalco, among other acts, filed a writ with the California Court of Appeal over the reliability of the grand jury transcript that caused over a 400-day delay; filed a motion to dismiss for pre-indictment delay that caused a 105-day delay; and filed a motion and later writs to remove Judge Millard after neglecting to file a peremptory challenge, which caused close to a 200-day delay. Maniscalco's attorney was also relieved of her duties by the court, a ruling Maniscalco challenged through writs in the California

5

Court of Appeal and the California Supreme Court. All together, Maniscalco's change of counsel caused approximately a 450-day delay. The time it took the appellate courts to decide the numerous writs Maniscalco filed is not delay that supports a speedy trial violation. See United States v. Loud Hawk, 474 U.S. 302, 316 (1986). It also bears noting that Maniscalco did not assert his right to a speedy trial until March of 1993 and that Maniscalco later waived time before his trial finally got underway in November of that year.

Since the state was not responsible for the delay, Maniscalco must show actual prejudice. See Doggett v. United States, 505 U.S. 647, 656 (1992) (noting that where the government pursued prosecution with reasonable diligence defendant must show actual prejudice to succeed on Sixth Amendment claim); see also United States v. Corona-Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007). Maniscalco has failed to show actual prejudice. His strongest claim for prejudice is that his father would have corroborated the alibi testimony of his mother and sister that he was with his family at the time of the murder. There is no reason to think, however, that the testimony of Maniscalco's father would have made any difference. The father's testimony would have been cumulative and likely not credible if the jury already disbelieved Maniscalco's mother and sister. And what

6

is more, Maniscalco's father had died before Maniscalco was even indicted so any prejudice could only bear on pre-indictment delay. Similarly, the destruction of physical evidence, such as the crime scene gun, also occurred prior to indictment. Prejudice from this, too, only bears on pre-indictment delay. Having the trial in months as opposed to nine years would not have averted these instances of alleged prejudice. On these facts, it cannot be said that the California Court of Appeal unreasonably applied Supreme Court precedent in holding that Maniscalco's Sixth Amendment right to a speedy trial was not violated.

In his next challenge to his conviction, Maniscalco argues that the exclusion of certain evidence, including impeaching evidence relating to Robert Robbins, violated his right to present a complete defense, as articulated in Chambers v. Mississippi, 410 U.S. 284 (1973), and its progeny. It was not an unreasonable determination of fact for the California Court of Appeal to find, as it did, that testimony about Robbins was unnecessary for impeachment purposes. The jury learned of Robbins's fraud to obtain title to motorcycles, incriminating testimony about the poison on the jar full of counterfeit money, wiping fingerprints off a gun and burying it, and we cannot say that the state court's cumulativeness ruling was an unreasonable application of Supreme Court precedent. The issue for the jury

was whether Robbins was lying, not whether he was a bad man, and there is nothing unreasonable about the state court's conclusion that Van Arsdell was a more persuasive witness than Robbins. Nor did the California Court of Appeal unreasonably apply Supreme Court precedent in rejecting Maniscalco's other evidentiary claims. None of the excluded evidence would have shown that Maniscalco did not participate in the murders. For that reason, a reasonable jurist could have distinguished this case from <u>Chambers</u>.

Finally, Maniscalco argues that the cumulative effect of the claimed errors deprived him of his right to due process. Any errors were on minor evidentiary matters that were not of constitutional magnitude. Thus, the cumulative effect of any error was not so great as to violate due process. <u>See</u> <u>Hayes v. Ayers</u>, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."); <u>see also</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996).

**AFFIRMED.**